**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MATTHEW MICHAELS, Jr., et al.,** | : | **Case No. 1:05cv2991** |
| | : | |
| **Plaintiffs,** | : | **JUDGE O'MALLEY** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF VERMILLION, et al.,** | : | <u>**OPINION & ORDER**</u> |
| | : | |
| **Defendants.** | : | |

This case is before the Court on Defendant Police Officers Richard Grassnig's and Michael Reinheimer's ("Officers") motion for summary judgment. (Doc. 17.)  In addition, the related *Plaintiffs' Motion for Leave to File Supplemental Response to Defendants' Motion for Summary Judgment* (Doc. 39), to which the Officers filed a response in opposition (Doc. 40), is now pending before the Court.

The Defendants, Grassnig and Reinheimer, are City of Vermillion, Ohio police officers.  They argue in their motion for summary judgment that they are entitled to qualified immunity barring the Plaintiffs' claims that they used excessive force in the arrest of Plaintiff Matthew Michaels, Jr. ("Michaels").[1]  As articulated more fully below, the Officers motion for summary judgment, (Doc. 17), is **DENIED** as to Officer Grassnig and **GRANTED** as to Officer Reinheimer.  Furthermore, the Plaintiffs' motion for leave to file a supplemental response (Doc. 39) is **DENIED**.  The Court will not consider Plaintiffs' supplemental response (Doc. 39) or the Officers' response in opposition (Doc. 40).

---

[1]  In fact, by Order of the Court, the legal basis of this motion is limited to the applicability of qualified immunity.  (Doc. 14.)

1

## I.    **FACTUAL BACKGROUND**

This lawsuit arises from Michaels' arrest on December 30, 2004.  (Doc. 1.)  The facts leading up to the arrest are not in dispute; however, material facts related to the manner in which the arrest was carried out are disputed.  Specifically, the Plaintiffs allege that the Officers gratuitously tased Michaels approximately twenty-five times, including in the testicles.  The Officers maintain that they tased Michaels fewer times and that they did not tase him gratuitously.[2]

In December of 2004, Michaels was a seventeen year old minor living with his mother, Plaintiff Sherrie Latessa.  (Doc. 1 at ¶ 1, 3-4.)  On December 30, 2004, Officer Grassnig visited the Plaintiffs' home with a Juvenile Complaint Form against Michaels for Ms. Latessa to sign.  (*Id.* at ¶ 9.)  When Officer Grassnig arrived at the Plaintiffs' home, Michaels and Ms. Latessa were outside near the garage.  (*Id.*)  After Michaels identified himself, Officer Grassnig began questioning him about his involvement in the subject of the juvenile complaint–spray painting "street tags" on several boats and buildings in Erie County the night before.  (*Id.* at ¶ 10; Doc. 24-2.)  When Officer Grassnig told him he was being charged with "criminal mischief," Michaels angrily denied involvement.  His mother told him to be quiet and go inside, and he did so.  (*Id.*)

Officer Grassnig then asked Ms. Latessa to sign the juvenile complaint and attempted to explain its purpose and contents to her.  Ms. Latessa read the complaint, but refused to sign it.  Officer Grassnig told her that, consequently, he would have to arrest Michaels and take him to the juvenile detention

_____

[2]    In filing and opposing summary judgment, the parties rely almost exclusively on brief affidavits and the police reports related to the accident.  Although the Court is perplexed as to why the parties would not submit deposition transcripts, it evaluates the motion for summary judgment based on the facts in the record, despite its belief that a more well-developed record would add clarity to the factual analysis.  *See* Fed. R. Civ. P. 56(e).

home.  (*Id.* at ¶ 11; Doc. 24-2.)

Upon hearing this, Michaels came out of the house.  According to Officer Grassnig's police report, he was then able to get one handcuff on Michaels before Michaels started to argue and resist. (Doc. 26-2.)  According to the Plaintiffs, Michaels did not resist being handcuffed at all.  (Doc.28-3 at ¶ 5; Doc. 28-2 at ¶ 4.)  In both accounts, however, Officer Grassnig was able to handcuff Michaels and call for another police cruiser to transport him to the juvenile detention home.

While they were waiting for the transport unit, Ms. Latessa changed her mind and told Officer Grassnig that she would sign the complaint.  Officer Grassnig let her sign the complaint, but said that he was still arresting Michaels and "charging him with disorderly conduct because of his actions, vulgarities, and disruptive behavior." (Doc. 24-2; *see also* Doc. 28-2 at ¶ 5.) Shortly thereafter, Officer Reinheimer arrived in his squad car to transport Michaels to the juvenile detention home.

The parties' accounts of what happened next are inconsistent.  It is undisputed, however, that, in the course of putting Michaels in Officer Reinheimer's squad car, Officer Grassnig tased Michael more than once.

## A.     THE OFFICERS' ACCOUNT OF THE USE OF THE TASER

Relying on Officer Grassnig's police report, the Officers say that Michaels physically resisted Officer Grassnig's efforts to lead him to Officer Reinheimer's squad car, braced himself against the door frame of the car, and generally struggled to avoid getting inside the car. (Doc. 24-2.)[3]  Officer Reinheimer assisted Officer Grassnig placing Michaels against the rear panel of his squad car and then moved to open the door so Michaels could be placed inside.  (Doc. 17-4.)  Officer Grassnig warned

---

[3]      Both Officers prepared affidavits and attached them to the motion for summary judgment.  (Docs. 17-3, 17-4.)  The account of Michaels' arrest in Officer Grassnig's affidavit is almost identical to his police report.  (Doc. 24-2.)

Michaels that he would tase Michaels if Michaels did not stop resisting.  (Doc. 24-2; Doc. 17-4.)  When

Michaels did not stop, Officer Grassnig tased him once in the leg area, causing him to jump into the car,

but in such a way that he was still able to brace himself against the car's frame and kick Officer

Grassnig in the shins.  (*Id*.)  After Michaels was again warned about tasing, Michaels continued to

struggle and Officer Grassnig "dry charged him again with the taser and continued to [do so] until he

had backed into the cruiser enough that we could close the door."[4]  (Doc. 24-2.)

### B.    THE PLAINTIFFS' ACCOUNT OF THE USE OF THE TASER

The Plaintiffs describe the Officers' use of the taser differently.[5]  Michaels says that he never

physically resisted prior to being tased, although he does admit verbally resisting and using vulgarities.

(Doc. 28-3 at ¶ 8.)  According to the Plaintiffs, Officer Grassnig "tasered" Michaels "continuously"

while he was handcuffed and "even after [he] was in the squad car and pinned against the back seat and

the rear passenger window."  (*Id*. at ¶ 10.)  More specifically, the Plaintiffs estimate that Michaels was

---

[4]      Officer Grassnig's police report states that he "dry-charged" Michaels with the taser.
(Doc. 24-2.)  This means that Officer Grassnig held the taser against Michaels' body
to deliver the electric shock.  In addition to "dry charging," a taser may be used on a
person from a distance.  The taser fires barbed wires that attach to the target
individual's clothes or body.  The taser delivers the electric shock through the wires.
*See* Taser Int'l Inc. – General Frequently Asked Questions, http://www.taser.com/
research/Pages/FAQGeneral.aspx (last visited Feb. 22, 2008) ("Taser Int'l Website").

[5]      The Plaintiffs' submit their account of the facts related to Michaels arrest in the form
of (1) Officer Grassnig's police report (Doc. 24-2, Ex. A); (2) the affidavit of
Matthew Michaels (Doc. 28-3); (3) the affidavit of Sherrie Latessa (Doc. 28-2); and
(4) nine photographs described in both Plaintiffs' affidavits as photographs taken by
the supervisor of the juvenile detention home depicting Michaels' injuries as a result
of being tased by Officer Grassnig (Docs. 28-2-3).  Notably, both Plaintiffs state in
their affidavits that "these events are contained in the police report of Officer
Grassnig of which a true and accurate copy is attached hereto as Exhibit A."  (Doc.
28-2 at ¶ 13; Doc. 28-3 at ¶ 14.)  Nevertheless, there is a definite difference between
the parties' views of how much and under what circumstances the Officers tased
Michaels.

tased approximately twenty-five (25) times, including in the testicles.  (*See* Docs. 28-1 at 3; 28-2 at ¶ 9; 1 at ¶ 12.)  They allege that, although Michaels was resisting prior to the first time Officer Grassnig tased him, after that point in time he stopped resisting.  (Doc. 28-2 at ¶ 15.)  The Plaintiffs admit that Michaels reacted physically while being tased (after the first tasing), but maintain that his reaction was purely reflexive.  (*Id.*)  Furthermore, the Plaintiffs state that, upon Michaels' arrival at the juvenile detention home, the supervisor of the home took photographs of his injuries from being tased and then called for an ambulance to take him to the emergency room for treatment.  (Doc. 28-3 at ¶ 15-16; Doc. 28-2 at ¶ 14.)  Finally, while Plaintiffs concede that Officer Reinheimer never tased Michaels, and do not even allege that Officer Reinheimer had any physical contact with Michaels, they assert that he "watched" and did not prevent Officer Grassnig's tasing.  (Doc 28-3 at ¶ 11; Doc. 28-2 at ¶ 10.)

C.      THE FACTUAL DISPUTE

Considering both parties submissions, there is a fundamental disagreement with respect to how much and under what circumstances the taser was used on Michaels.  It is undisputed that Michaels was tased while in handcuffs and at the threshold of Officer Reinheimer's squad car, but the Officers submit that Michaels was tased only several times, while the Plaintiffs estimate that they tased him approximately twenty-five times.  Furthermore, the Officers maintain that Michaels was only tased when and because he was resisting arrest, and then just enough to move him inside the squad car so that they could shut the door.  Michaels, on the other hand, maintains that, after tasing him once to get him to stop resisting, the Officers tased him gratuitously in that they tased him while subdued by handcuffs, and continued to tase him even after he had stopped resisting arrest and was fully inside the squad car.

In their Complaint, the Plaintiffs allege that the Officers used excessive force when one of them tased  Michaels.  In response, the Officers have filed this motion for summary judgment, asserting

5

entitlement to qualified immunity because, they maintain that, under the circumstances, using the taser on Michaels was objectively reasonable and did not amount to excessive force.

## II.    **PROCEDURAL HISTORY**

On December 29, 2005, the Plaintiffs filed a Complaint against the City of Vermillion, Ohio, Officer Grassnig, and Officer Reinheimer (collectively, "Defendants").  (Doc. 1.)  The Complaint alleges the following causes of action arising out of the facts and circumstances described above: (1) the use of excessive force in violation of the fourth and fourteenth amendments to the U.S. Constitution against all of the defendants; (2) assault and battery against Officers Grassnig and Reinheimer; (3) negligent or intentional infliction of emotional distress against all of the defendants; and (4) negligent training and supervision against the City of Vermillion.  (*Id.*)

At the Case Management Conference held on March 23, 2006, the Court limited dispositive motions to the issue of qualified immunity and set a June 23, 2006 deadline for such motions.  (Doc. 14.)  On June 23, 2006, the Officers filed their *Motion of Defendants Richard Grassnig and Michael Reinheimer for Summary Jugment* [sic], which is now before the Court.  (Doc. 17-1.)

After receiving an extension of time to respond to the motion for summary judgment, the Plaintiffs improperly filed a notice of dismissal under Federal Rule of Civil Procedure 41(a)(1), (Doc. 21), which the Court granted marginally on August 31, 2006, believing dismissal was unopposed.  The Defendants thereafter filed a timely brief in opposition to dismissal (Doc. 22), and the Court vacated the dismissal on October 24, 2006, ordering the Plaintiffs to respond to the Officers' motion for summary judgment within ten days.  (Doc. 23.)

Thirteen days later, the Plaintiffs filed *Plaintiffs' Response to Defendants' Motion for Summary Judgment* (Doc. 24), arguing that summary judgment on qualified immunity grounds is not appropriate.

6

The Plaintiffs attached as exhibits Officer Grassnig's police report, the juvenile complaint form, and the nine photographs of Michaels' taser injuries purportedly taken upon his arrival at the juvenile detention home by the supervisor of the home.  (Docs. 24-1 and 24-2.)  The Plaintiffs did not attach affidavits to their response in opposition.

The Officers then filed *Defendants Reply Brief to Plaintiffs' Response to Defendants' Motion for Summary Judgment and Motion to Strike* (Doc. 26-1), on November 15, 2006.  In this reply, the Officers argued, *inter alia*, that:  (1) the response was untimely; and (2) the exhibits to the Plaintiffs' response in opposition are unsupported documents under Rule 56 and should be stricken.  (*Id.*)  The Plaintiffs opposed the motion to strike on November 27, 2006, arguing that their failure to attach properly executed affidavits to their response in opposition to summary judgment was due to the individual Plaintiffs' unavailability.  (Doc. 27.)  In addition, the Plaintiffs supplemented their response in opposition with executed affidavits of Michaels and Ms. Latessa.  (Doc. 28.)  The Officers responded with another reply brief on December 6, 2006, objecting to the Plaintiffs' filing of supplemental affidavits.  (Doc. 29.)

On March 22, 2007, the Court resolved this battle of briefs by denying the Officers' motion to strike the evidentiary materials attached to the Plaintiffs' brief in opposition to summary judgment, but granting the Officers leave to file an amended reply in support of summary judgment.  (Doc. 37.)  The Officers filed their *Amended Reply to Plaintiffs' Amended Response to Defendants' Motion for Summary Judgment* (Doc. 38) on April 2, 2007.

Lastly, the Plaintiffs filed *Plaintiffs' Motion for Leave to File Supplemental Response to Defendants' Motion for Summary Judgment* (Doc. 39), on May 16, 2007.  The sole purpose of this motion is to inform the Court of *Sallenger v. Oakes*, 473 F.3d 731 (7th Cir. 2007), a case which the

Plaintiffs argue is relevant authority.  The Officers responded by filing a brief in opposition addressing the *Sallenger* case, re-asserting their arguments in support of summary judgment and attaching a computer generated "Taser Usage Log," purportedly indicating how many times and for how long Officer Grassnig's taser was used on the day of Michaels arrest.  (Doc. 40.)

### III.    ANALYSIS

#### A.    THE PLAINTIFFS' MOTION FOR LEAVE TO FILE A SUPPLEMENTAL RESPONSE

As a preliminary matter, the Court will address *Plaintiffs' Motion for Leave to File Supplemental Response to Defendants' Motion for Summary Judgment* (Doc. 39).  The Court has already allowed Michaels to file an untimely response in opposition to the Officers' motion for summary judgment, (Doc. 24), and a supplemental response in opposition to summary judgment (Doc. 28).  (*See* Doc. 37.)  As demonstrated by the long and tortured procedural history of this motion described above, the Plaintiffs have had ample opportunity to present their arguments in opposition to summary judgment.  This motion has been fully briefed by both parties.  Therefore, the Plaintiffs' motion for leave to file a supplemental response (Doc. 39) is **<u>DENIED</u>**.  Accordingly, the Officers' response in opposition (Doc. 40) is rendered **<u>MOOT</u>**.[6]  The Court will not consider either filing in resolving the Officers' motion for summary judgment.

#### B.    THE OFFICERS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY

The issue before the Court on summary judgment is whether qualified immunity insulates

---

[6]    Moreover, the Defendants' supplemental response includes little by way of information or useful explanation of the facts in this case.  Although the Defendants purport to submit a "Taser Usage Log" as an exhibit to the supplemental response, the log is confusing on its face and is not useful without some expert explanation of its contents.

Officers Grassnig and Reinheimer from the Plaintiffs' excessive force claims under 42 U.S.C. § 1983.

### 1.    The Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the facts and any inferences reasonably drawn from them in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *St. John v. Hickey*, 411 F.3d 762, 768 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

9

248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases, including cases involving excessive force claims arising under § 1983, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### 2.     **Qualified Immunity**

The Plaintiffs claim that Officers Grassnig and Reinheimer used excessive force in violation of the Fourth and Fourteenth Amendments when Officer Grassnig tased Michaels while putting him in the squad car.[7] These claims arise under 28 U.S.C. § 1983, which requires a plaintiff to "establish (1) the

---

[7]     Plaintiffs allege that the Officers' conduct violated both the Fourth Amendment and the Fourteenth Amendment. (Doc. 1 at ¶ 2.) In the context of the right to be free from excessive force, however, the Sixth Circuit applies a Fourth Amendment seizure analysis to the claims. *See Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 606 n.4 (6th Cir. 2006) (citing *Ciminillo v. Streicher*, 434 F.2d 461, 465-66 (6th Cir. 2006)).

deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (omitting citations).  When applicable, however, the doctrine of qualified immunity protects government officials, including police officers, from § 1983 claims.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pierson v. Ray*, 386 U.S. 547 (1967) (establishing that police officers may claim qualified immunity from suits brought under § 1983).  In general, qualified immunity applies when government officials' conduct in performing discretionary functions "does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818.

The goal of qualified immunity is to "avoid excessive disruption of government" by protecting public officials' ability to exercise their discretion without undue fear of civil liability. *Id.*  In particular, "police officers are entitled to qualified immunity unless, 'on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the conduct was lawful] . . . .'" *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  When a police officer invokes qualified immunity, the burden is on the Plaintiff to demonstrate that the officer is *not* immune.  *See Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

### i. The *Saucier* Test for Qualified Immunity

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-prong test for qualified immunity in the context of an excessive force claim arising under § 1983.  First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id*. at 201.  Second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id*.  A motion for summary judgment on qualified immunity grounds must be granted

11

unless the Plaintiff can satisfy both prongs of the *Saucier* test.[8]

> ### a.  Prong One: Whether the Offices' Conduct Violated a Constitutional Right

Under the first prong of *Saucier*, 533 U.S. at 201, the district court must determine whether the defendant's conduct violated a constitutional right.  In making this determination, the Court must construe the evidence of a constitutional violation in the light most favorable to the plaintiff.  *Id*. Therefore, even if the facts are disputed, if the plaintiff's version of the facts does not rise to the level of a constitutional violation, then the first prong has not been satisfied and qualified immunity applies.

---

[8]     The Sixth Circuit has broken the two-prong *Saucier* test for qualified immunity into three-prongs:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir.1996))).  As the Sixth Circuit explained in *Sample v. Bailey*, 409 F.3d 689, 696 n.3 (6th Cir. 2005), the first two steps mirror the two prongs of the *Saucier* test, and the third prong acknowledges the reasonableness requirement that is implicit in the clearly established prong as explained in *Saucier*.  Judge Moore clearly prefers the three-prong approach.  *Myers v. Potter*, 422 F.3d 347, 358-59 (6th Cir. 2005) (Moore, J., concurring).  Other panels have held that the three-step test is correct, but unnecessary in most cases, because "[i]n many factual contexts . . . the fact that a right is "clearly established" sufficiently implies that its violation is objectively unreasonable."  *Causey v. City of Bay City*, 442 F.3d 524, 528 n.2 (6th Cir. 2006).  In this case, the Court finds that the latter approach is sufficient.  The reasonableness of the Officers' conduct is discussed below in connection with the second prong of the *Saucier* test.

*See Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997).  With this in mind, the *Saucier* directive to construe the evidence in the light most favorable to the plaintiff has particular significance when (1) there are disputed issues of fact and, (2) whether a constitutional violation occurred hinges on which version of the facts is accepted.  That is, when the plaintiff's evidence, viewed in the most favorable light, amounts to a constitutional violation, prong one of the *Saucier* test is satisfied *even if the facts pertinent to the alleged constitutional violation are disputed.  See id*.

It is axiomatic that individuals have a constitutional right not to be subjected to excessive force during an arrest.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  Claims of excessive force in the context of an arrest are analyzed under the Fourth Amendment's "objective reasonableness standard." *Saucier*, 533 U.S. at 204 (citing *Graham*, 490 U.S. at 388).   If the amount of force used to accomplish the arrest is objectively reasonable based on Fourth Amendment seizure principles, then no constitutional violation occurred, and prong one of the *Saucier* test is satisfied.  *See Baker*, 471 F.3d at 606.

> In *Graham*, the Supreme Court established the test for determining objective unreasonableness.
>
> Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.

*Graham*, 490 U.S. at 396.  While individuals clearly have a right to be free from excessive force, police officers have an essential duty to arrest suspects and, necessarily, "the right to use some degree of physical coercion or threat thereof to effect [the arrest]."  *Id*.  Whether the arresting officer's use of force is reasonable should be evaluated on a case by case basis, from the perspective of an officer on the scene, and in light of the "difficulties of modern police work."  *Baker*, 471 F.3d at 606 (internal

quotations and citation omitted).  Although the ultimate inquiry is whether the totality of the circumstances justifies the force used to accomplish the arrest, the Supreme Court has identified three factors for the district court to consider in determining reasonableness:

> (1) the severity of the crime at issue;
> (2) whether the suspect posed an immediate threat to the police officers or others; and
> (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight.

*Graham*, 490 U.S. at 396; *see also St. John*, 411 F.3d at 771.

### b. Applying Prong One of the *Saucier* Test to the Officers' Conduct

Considering these factors in the totality of the circumstances test, if the Officers' use of force–the taser--was unreasonable under the particular circumstances of this case, then a constitutional violation occurred.

Officer Grassnig and Officer Reinheimer played different roles in the arrest of Michaels.  Officer Grassnig handcuffed and tased Michaels, while Officer Reinheimer provided his squad car to transport Michaels and assisted Officer Grassnig in getting Michaels to the car.  Therefore, each officer will be analyzed separately under the first prong of the *Saucier* test for qualified immunity.

> 1. Viewed in the Light Most Favorable to the Plaintiffs, the Evidence Indicates that Officer Grassnig Used Excessive Force

The parties do not dispute that Officer Grassnig handcuffed Michaels and then tased him in the process of putting him in Officer Reinheimer's squad car.  The following facts related to Officer Grassnig's use of the taser, however, are disputed:

> (1) The number of times Officer Grassnig tased Michaels – Officer Grassnig submits that he tased Michaels several times, while the Plaintiffs submit that he tased Michaels approximately twenty-five (25) times.

14

(2) Whether Officer Grassnig tased Michaels gratuitously – Officer Grassnig submits that he stopped tasing Michaels as soon as Michaels was fully inside the squad car, while the Plaintiffs submit that Officer Grassnig tased Michaels even after he was fully inside the squad car.

(3) The extent to which Michaels was resisting arrest after the first time Officer Grassnig tased him – Officer Grassnig submits that, after he tased Michaels for the first time, Michaels was bracing himself against the door of the squad car and kicking Officer Grassnig in the shins, while Michaels submits that, at that time, he was kicking reflexively as a result of being tased continuously and that he was not, at that point, actively resisting any of the Officers' directions.

Under prong one of the *Saucier* test, the Court must view the evidence in the light most favorable to the Plaintiffs. *Saucier*, 533 U.S. at 201.  Nonetheless, the Plaintiffs must submit sufficient evidence to support their view of the facts. *See Carroll v. County of Trumbull*, No. 4:05CV1854, 2006 WL 1134206, *13 (N.D. Ohio Apr. 25 2006) (finding vague and conclusory allegations of excessive force insufficient evidence to overcome summary judgment).

The Plaintiffs' version of Officer Grassnig's conduct is supported by their own affidavits and the photographs purportedly depicting Michaels' taser wounds.  As noted above, the Court finds it peculiar that neither party submitted deposition transcripts describing the facts in greater detail. Nonetheless, although this evidence is not overwhelming in terms of quality or quantity, the affidavits tell a coherent story, and issues of witness credibility must be resolved in favor of the Plaintiffs based on the summary judgment standard. *See Bass v. Robinson*, 167 F.3d 1041, 1046 (6th Cir. 1999).

It is undisputed that Michaels was in handcuffs when Officer Grassnig tased him, and his assertion that he was kicking reflexively rather than deliberately is plausible given that a taser incapacitates the subject by causing "immediate loss of . . . neuromuscular control and the ability to perform coordinated action for the duration of the impulse." Taser Int'l Website, *supra*.  In addition, the photographs, which depict at least five separate marks on Michaels' body, lend some credibility to

15

the Plaintiffs' story.

The Plaintiffs have thus submitted evidence sufficient to support their version of the facts. The next question under the *Saucier* analysis is whether the Plaintiffs' evidence indicates that Officer Grassnig used excessive force in violation of the Fourth Amendment. This question hinges on whether Officer Grassnig's use of the taser was objectively reasonable under the circumstances. *See Graham*, 490 U.S. at 396. Balancing Officer Grassnig's use of force as described by Plaintiffs – the repeated, gratuitous use of the taser – against Michaels' right to be free from excessive force, and using the three factors listed in *Graham* as a guide, the Plaintiffs' evidence establishes that a jury could find that Officer Grassnig's conduct rose to the level of a constitutional violation.

The governmental interest in using reasonable force to accomplish an arrest is clear and strong. However, it is also well-established that "the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." *See e.g.*, *Bultema v. Benzie County*, 146 Fed. Appx. 28, 35 (6th Cir. 2005) (citing *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988); *Roberts v. Manigold*, 240 Fed. Appx. 675, 677-78 (6th Cir. 2007) (citing *Bultema*); *Griffith v. Coburn*, 473 F.3d 650, 658 (6th Cir. 2007); *St. John*, 411 F.3d at 774-75; *United States v. Sanders*, 719 F.2d 882, 887 (6th Cir. 1983). Moreover, a line of Sixth Circuit cases holds that the use of non-lethal, temporarily incapacitating force on a handcuffed suspect who no longer poses a safety threat, flight risk, and/or is not resisting arrest constitutes excessive force. *See Bultema*, 146 Fed. Appx. at 35 (citing *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004), *cert. denied*, 544 U.S. 975 (2005); *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002); *Vaughn v. City of Lebanon*, 18 Fed. Appx. 252, 265 (6th Cir. 2001); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994); *Landis v. Cardoza*, 515 F. Supp. 2d 809, 814-15 (E.D. Mich. 2007)(analogizing pepper spray with tasers for qualified immunity purposes);

16

*Goebel v. Taser Int'l Inc.*, No. 5:07CV0027, 2007 WL 2713053, at *6 (N.D. Ohio Sept. 14 2007).

For example, in *Roberts*, the Sixth Circuit held that a reasonable jury could find that the police officer's repeated use of a taser on a subdued suspect was objectively unreasonable. *Roberts*, 240 Fed. Appx. at 678. The Court specifically noted that the weapon the officers use – whether it is pepper spray or a taser – is not critical to the objective reasonableness inquiry. *Id.* at n.4. "The type of weapon used is not the issue; the excessiveness of the force is the Fourth Amendment inquiry." *Id.*

The *Graham* factors–severity of the crime at issue, safety threat, and resistance--will prove useful in addressing the objective reasonableness inquiry here.

First, the crimes for which Michaels was arrested–resisting arrest, disorderly conduct, and criminal mischief–are not particularly severe.

Second, the evidence does not establish that Michaels posed a significant threat to the Officers, and there is *no* evidence that he posed a threat to anyone else. Although Officer Grassnig's police report indicates that "in his effort to resist [Michaels] turned, put his head down, and came at me," at that time Michaels was in handcuffs and Officer Reinheimer was present to assist Officer Grassnig. (Doc. 24-2.) In addition, this exchange occurred *before* Officer Grassnig tased Michaels for the first time. Chronology is important here, because the Plaintiffs' excessive force claim relates specifically to whether Officer Grassnig used the taser gratuitously. (Doc. 1 at ¶ 18.) In the excessive force context, segmenting the incident at issue is appropriate in order to isolate the particular use of force that is allegedly excessive. *See Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996); *see also, e.g.*, *Russo v. City of Cincinnati*, 953 F.3d 1036, 1044-45 (6th Cir. 1992). Thus, the question in this case is whether Michaels was a threat to officer safety *after* Officer Grassnig tased him once and he was at the threshold of the door of the squad car. The Plaintiffs' attest that, although Michaels kicked Officer

17

Grassnig at that time, he did so reflexively as a result of being tased.

The same segmenting concept is applicable under the third factor – whether Michaels was resisting arrest or attempting to evade arrest.  It is undisputed that Michaels resisted arrest when he refused to get in the squad car.  This does not establish, however, that he was resisting arrest after that point in time – *i.e.*, when according to Plaintiffs, the Officers used the allegedly excessive force.[9] Indeed, the Plaintiffs say that Michaels stopped resisting arrest when Officer Grassnig tased him the first time, and that any 'resistance' thereafter was a reflexive reaction to being tased.

Focusing on the tasing–the specific conduct alleged to constitute excessive force–the *Graham* factors favor finding that, taking the facts as alleged by the Plaintiffs, a jury could find that a constitutional violation occurred.  In other words, the discrepancy between the parties' accounts of the tasing constitutes a material issue of fact and, under the first prong of the *Saucier* test, the Plaintiffs' version of the facts rises to the level of a constitutional violation.

The Officers argue that this case is analogous to three other taser cases: *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), *Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467, 469 (E.D. Mich. 2006), and *R.T. v. Cincinnati Public Schools*, No. 1:05CV605, 2006 WL 3833519 (S.D. Ohio Dec. 29, 2006).  In each of these cases, the court granted qualified immunity, holding that the use of a taser did not amount to excessive force under the circumstances. These cases, however, are distinguishable from the Plaintiffs' version of the facts in this case based on (1) the suspect's continuous resistence to arrest and/or (2) how much the officer tased the plaintiff.  In *Draper*, the officer tased the suspect once, and the court held that the use of the taser was proportionate to the situation.  369 F.3d at 1273, 1278.  In

---

[9]     As the Officers point out, Michaels was convicted in the juvenile court of resisting arrest.  (Doc. 17-1 at p. 6-7; Doc. 17-3 at ¶ 10.)  The Officers' argument that this conviction bars the Plaintiffs' excessive force claim is discussed *infra* at § III(C).

18

*Johnson*, the officer tased a handcuffed juvenile twice. 434 F. Supp. 2d at 471. The juvenile, however, admitted that he continuously resisted arrest, that he sustained no injuries as a result of being tased, and did not seek medical treatment of any kind. *Id*. The officer in *Johnson* did not tase the juvenile after he stopped struggling. *Id*. Likewise, in *R.T.*, the officer tased a juvenile suspect once after warning her to calm down and stop resisting arrest. 2006 WL 3833519 at *2. After being tased the plaintiff in *R.T.* stopped resisting. *Id*.

Because this matter is before the Court on summary judgment, and because of the directive to view the evidence in the light most favorable to the plaintiffs under the first prong of the *Saucier* test for qualified immunity, the Court compares the facts in the cases cited by the Officers to the Plaintiffs' version of the events in this case. With this in mind, viewed in the light most favorable to the Plaintiffs, the evidence in this case conceivably could establish that, unlike the suspects in *Draper*, *Johnson*, and *R.T.*, a jury could find that Michaels was tased gratuitously and suffered serious injuries requiring emergency medical care. A jury could find that Officer Grassnig's use of the taser amounted to excessive force. There is, accordingly, a material issue of fact with respect to the question of whether Officer Grassnig's conduct was objectively unreasonable under the Fourth Amendment totality of the circumstances test. *See Graham*, 490 U.S. at 396. The first prong of the *Saucier* test is thus satisfied as to Officer Grassnig's conduct.

2. <u>Officer Reinheimer is Entitled to Qualified Immunity</u>

Officer Reinheimer's conduct at the scene of Michaels' arrest is not disputed. He arrived after Officer Grassnig had already arrested and handcuffed Michaels, and he assisted Officer Grassnig in directing Michaels to the squad car to take him to the juvenile detention home.

Officer Reinheimer's liability in this case hinges on whether he had the opportunity and means

19

to prevent the alleged use of excessive force by Officer Grassnig.  *See Turner*, 119 F.3d at 429.  If Officer Reinheimer (1) "observed or had reason to know that excessive force would be or was being used, and (2) . . . had both the opportunity and the means to prevent the harm from occurring," he may be held liable for failing to protect Michaels from the use of excessive force.  *Id.*  Under the second prong of this test, the Plaintiffs must show that Officer Reinheimer "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass*, 167 F.3d at 1048. Officer Reinheimer must have *encouraged or condoned* the actions of Officer Grassnig.  *Id.*

It is undisputed that Officer Reinheimer observed Officer Grassnig tasing Michaels and even warned Michaels that he might be tased if he did not cease resisting arrest.  The issue in this case is very narrowly defined, however.  Because Michaels was found guilty of resisting arrest, the Plaintiffs' only legitimate claim is that Officer Grassnig tased him *gratuitously* after he was inside the squad car and the arrest had been effectuated.[10]  Officer Reinheimer is therefore entitled to qualified immunity unless the Plaintiffs establish that he had the means and opportunity to prevent the post-arrest gratuitous tasing of Michaels.

The Plaintiffs' characterization of Officer Reinheimer's conduct with respect to the specific event at issue here – Officer Grassnig's alleged tasing of Michaels when he was already in the squad car -- does not satisfy this burden.   In his affidavit, Michaels states the following regarding Officer Reinheimer:

> That Officer Reinheimer never attempted to restrain Officer Grassnig from tazering [sic] me, he merely watched even after I was totally in the back seat of his squad car and Officer Grassnig kept tazering [sic] me.

---

[10]        *See infra* § III(C).

(Doc. 28-3 at ¶ 11.)[11] Under Plaintiffs' own version of the events, any tasing that occurred did so in rapid succession.  First, Officer Grassnig tased Michaels once when he was physically resisting both Officers' effort to place him in the squad car.  Next, the Plaintiffs allege that Officer Grassnig continued to tase Michaels, even though he was fully in the squad car and stopped resisting arrest after being tased once.  The Plaintiffs' claims do not relate to the first use of the taser, only the subsequent, allegedly gratuitous tasing.  As discussed in more detail *infra* § III(C), the Plaintiffs' excessive force claims are, and must be, very narrowly confined to the post-arrest, gratuitous tasing of Michaels.  Under the circumstances as described by the Plaintiffs, there is no evidence that Officer Reinheimer anticipated, or could have anticipated, that Officer Grassnig would tase Michaels gratuitously.  The Plaintiffs' do not dispute, moreover, Officer Reinheimer's assertion that, once near the squad car, he physically separated himself from Michaels and Officer Grassnig by moving away to open the squad car door.  Given both his physical separation from and rapid succession of the events at issue, the Plaintiffs' submissions simply do not establish that Officer Reinheimer could have prevented Officer Grassnig's conduct. Plaintiffs' bold assertions that Officer Reinheimer merely "watched" the events and did not prevent them are not enough.  The evidence is, thus, insufficient to establish that Officer Reinheimer's participation exceeded tacit approval.[12]  *See Bass*, 167 F.3d at 1048.

Because the Plaintiffs cannot satisfy Prong One of the *Saucier* test as to Officer Reinheimer,

---

[11]    Ms. Latessa's description of Officer Reinheimer's conduct in her affidavit is almost verbatim of Michaels' description.  (Doc. 28-2 at ¶ 10.)

[12]    Officer Reinheimer's affidavit states that he was assisting Officer Grassnig in placing Michaels in the squad car, and that both Officers warned Michaels that he would be tased if he did not stop resisting.  (Doc. 17-4 at ¶ 2.)  The description does not indicate, however, that Officer Reinheimer actively assisted Officer Grassnig in tasing Michaels gratuitously, nor does it suggest that Officer Reinheimer could have prevented Officer Grassnig from tasing Michaels in the manner that he did.

21

and, indeed made very little effort in their submissions to do so,  he is entitled to qualified immunity. Summary judgment is therefore **GRANTED** as to Officer Reinheimer, and the Plaintiffs' claims against him are **DISMISSED**.

### c.      Prong Two: Whether the Right is "Clearly Established"

Because the Plaintiffs have satisfied prong one with respect to Officer Grassnig, the Court must consider prong two of the *Saucier* test for qualified immunity.  The second prong of the test is whether the constitutional right at issue is clearly established.  *Saucier*, 533 U.S. at 201.  In *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), the Supreme Court clarified that the right at issue must be defined with specificity.  The Court noted that characterizing the right at issue in general terms – *e.g.*, 'the right to be free from excessive force' – would allow plaintiffs to "convert the rule of qualified immunity . . . into a rule of virtually unqualified immunity simply by alleging violation of extremely abstract rights." *Id.* at 639.  "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202 (citing *Wilson*, 526 U.S. at 615).  "In inquiring whether a constitutional right is clearly established, [the district court] must look first to the decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth Circuit], and finally to decisions of other circuits." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004).

Even though the Plaintiffs have satisfied prong one of the *Saucier* test with respect to Officer

22

Grassnig, if it was not clearly established that a reasonable officer on the scene would have known that his conduct was unlawful under the circumstances, then Officer Grassnig is entitled to qualified immunity. *Id*.

> **d.** **Applying Prong Two:  It is Clearly Established that the Use of Force on a Subdued Suspect Who is not a Safety or Flight Risk is Excessive**

As discussed above, there are material issues of fact as to whether Officer Grassnig used gratuitous force in tasing Michaels and whether that force was objectively unreasonable.  Specifically, under prong one of the *Saucier* test,  the evidence, construed in the light most favorable to the Plaintiff, would allow a reasonable jury to conclude that Officer Grassnig's use of the taser was, indeed, unreasonable.  The same construction of the facts necessarily applies to prong two as well; the question is whether the constitutional right that Officer Grassnig arguably violated under the prong one analysis is clearly established.

The first step in applying prong two of the *Saucier* test is to specifically define the right at issue. *Anderson*, 483 U.S. at 640.  The Plaintiffs excessive force claims are based on the extent and timing of Officer Grassnig's use of the taser.  The evidence, construed in the light most favorable to the Plaintiffs, indicates that Officer Grassnig tased Michaels *after* arresting and handcuffing him, and *continued* to tase him after Michaels had ceased to resist arrest.  Under these circumstances, the right at issue is an arrestee's right to be free from the gratuitous use of force when the arrestee has been handcuffed, is not a safety or flight risk, and is not resisting arrest.  As discussed under the prong one analysis above, a jury could find that Officer Grassnig's conduct violated this particular right.  He is nonetheless entitled to qualified immunity if this particular right is not 'clearly established.'

The Sixth Circuit has repeatedly held that "the right of people who pose no safety risk to the

police to be free from gratuitous violence during arrest" is clearly established.  *See, e.g.*, *Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006).  In fact, the Sixth Circuit has applied this rule in several cases involving claims that a police officer used excessive force in pepper spraying or tasing a suspect.[13]  *See, e.g.*, *Roberts*, 240 Fed. Appx. at 677-78; *Bultema*, 146 Fed. Appx. at 37; *Champion*, 380 F.3d at 903; *see also Landis*, 515 F. Supp. 2d at 814-15 (analogizing pepper spray with tasers for qualified immunity purposes).  These cases establish that the use of a taser or chemical spray, although nonlethal, may be excessive if it is gratuitous.

As discussed above in connection with prong one, construing the facts in the light most favorable to the Plaintiffs, a reasonable jury could conclude that Officer Grassnig tased Michaels gratuitously and unreasonably.  Therefore, based on the well-established line of authority prohibiting the gratuitous use of nonlethal, temporarily incapacitating force, it would be clear to a reasonable officer that the manner in which Officer Grassnig allegedly used the taser on Michaels was unlawful under the

---

[13]     The Officers contend that the right at issue is not clearly established because there is no Supreme Court or Sixth Circuit case involving the use of a taser under the precise circumstances presented here.  They are wrong.  First, in *Roberts v. Manigold*, the Sixth Circuit denied qualified immunity, holding that a jury could find that the officer's use of a taser violated the suspect's "clearly established Fourth Amendment right."  *Roberts*, 240 Fed. Appx. at 677-78.  Second, in *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), the Supreme Court explained that a case does *not* have to be "fundamentally similar" to the facts at bar to show that the right at issue is clearly established.  Prior cases are reliable if they provide "reasonable warning that the conduct at issue violated constitutional rights."  *Id.* at 740.  As the Sixth Circuit noted in *Roberts*, the excessiveness of the force, not the type of weapon, is the critical inquiry.  2007 WL 1732903 at *3.  Similarly, in *Landis*, 515 F. Supp. 2d at 814-15, the court specifically analogized tasers and pepper spray: "the Sixth Circuit's position on pepper spray also serves as sufficient notice that the unwarranted or improper use of a taser by a government official can constitute excessive force in violation of a suspect's clearly established constitutional rights."  *See also Goebel*, 2007 WL 2713053 at *6 (N.D. Ohio Sept. 14 2007)(citing numerous cases analyzing excessive force and the use of chemical sprays).

circumstances.  The 'clearly established' prong of the *Saucier* test is thus satisfied.

The Plaintiffs have satisfied both prongs of the *Saucier* test as to Officer Grassnig.  Consequently, Officer Grassnig is *not* entitled to qualified immunity and the motion for summary judgment is **DENIED** as to Officer Grassnig.

### C.    THE IMPACT OF MICHAELS' RESISTING ARREST CONVICTION UNDER *HECK V. HUMPHREY*

The Officers argue that Michaels' conviction for resisting arrest in juvenile court precludes a finding of excessive force.  (Doc. 17-1 at pp. 6-7.)  This issue implicates the Sixth Circuit's interpretation of *Heck v. Humphrey*, 512 U.S. 477 (1994).[14]

In *Heck*, the Supreme Court held that § 1983 claims cannot be maintained if the claims imply the invalidity of a prior state court conviction.  *Heck*, 512 U.S. at 487; *see also Swiecicki v. Delgado*, 463 F.3d 489, 493 (6th Cir. 2006)(noting that, under *Heck*, the "key inquiry . . . is whether [the plaintiff's] excessive force claim pursuant to § 1983 would have implied the invalidity of his criminal convictions").  The Supreme Court used resisting arrest as an example of a state court conviction that would bar a § 1983 claim for unreasonable seizure:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest . . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures.  In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted.  Regardless of the state law concerning res judicata . . . the § 1983 action will not lie.

*Id.* at 487 n.6 (internal citations omitted).

---

[14]    Amazingly, neither party cites *Heck* or its progeny in addressing the impact of Michaels' juvenile court conviction.  (Doc. 17-1 at pp. 6-7; Doc. 24 at p. 8.)  *Heck*, however, is the primary authority that must be analyzed in order to address the issue raised by the Officers.

While *Heck* directly addresses the preclusive effect of a resisting arrest conviction in the context of unreasonable *seizure*, it does not directly address § 1983 excessive force claims.

In *Swiecicki v. Delgado*, 463 F.3d 489, 493-95 (6th Cir. 2006), the Sixth Circuit recently analyzed whether *Heck* and its Sixth Circuit progeny bar an excessive force claim when the plaintiff was convicted of resisting arrest. In *Swiecicki*, the § 1983 plaintiff alleged that a police officer used excessive force in arresting him at a Cleveland Indians baseball game. *Swiecicki*, 463 F.3d at 491. The plaintiff was allegedly so obnoxious that an officer was called to escort him from his seat. *Id.* The officer held the plaintiff by the arm (in the "escort position") as he escorted him from his seat, but did not arrest him immediately. *Id.* at 492. According to the officer, the plaintiff tried to jerk his arm free of the officer's grasp and only then did he use force to subdue and arrest him. According to the plaintiff, the officer used force without any provocation whatsoever, *i.e.*, the force preceded the resistance.[15] *Id*. The parties agreed that the officer placed the plaintiff under arrest *after* using force to subdue him. *Id*. The plaintiff was later convicted of resisting arrest in Cleveland Municipal Court. *Id.* The Sixth Circuit held that *Heck* barred the plaintiff's § 1983 claims. *Id*. at 495.

In so holding, the Sixth Circuit specifically noted that a lawful arrest is an element of resisting arrest under Ohio law. *See id*. at 494; O.R.C. § 2921.33. An arrest is not lawful under Ohio law if the arresting officer uses excessive force. *Id.* Therefore, a § 1983 claim for excessive force *necessarily* implies the invalidity of a conviction for resisting arrest as the crime is defined under Ohio law. By definition, an individual who is convicted of resisting arrest under Ohio law cannot assert a § 1983 claim based on the conduct of the police *prior to the point of the arrest*.

---

[15] The Sixth Circuit held that, in evaluating whether *Heck* applies, it must consider the facts as alleged by the § 1983 plaintiff. *Swiecicki*, 463 F.3d at 492.

26

The *Swiecicki* court recognized the particularly close relationship between the offense "resisting arrest" and the use of force by the police in accomplishing an arrest.  While *Heck* bars excessive force claims that imply the invalidity of a resisting arrest conviction under Ohio law, *Swiecicki*, 463 F.3d at 493, the use of force that gives rise to an excessive force claim could potentially occur after a lawful arrest was accomplished.  Under these circumstances, the excessive force claims do not imply the invalidity of the resisting arrest conviction.

The Sixth Circuit thus expressly limited the applicability of *Heck* based on the timing of the alleged excessive force.  *Id*. at 494-95 (analyzing *White v. Ebie*, No. 98-3158, 1999 WL 775914 (6ᵗʰ Cir. 1999), and *City of Cleveland v. Murad*, 84 Ohio App. 3d 317 (Ohio Ct. App. 1992)).  *Heck* only bars § 1983 claims when the force at issue is allegedly used ***prior to, or in conjunction with,*** the suspect's resistance.  *Jackim v. City of Brooklyn*, No. 1:05 cv 1678, 2007 WL 893868, at *6 (N.D. Ohio Mar. 22 2007).  When the alleged excessive force is used ***after*** the suspect ceases resisting arrest, the *Heck* rule does not apply.  *Id.*

Applying this concept in *Swiecicki*, the Sixth Circuit drew a line in the sequence of events, with the line falling between the events leading up to the arrest and those occurring after the arrest.  The plaintiff in *Swiecicki* specifically alleged that the force in question was unprovoked and preceded any resistance, so his claim was barred by *Heck*.  *Id.* at 494.  The Sixth Circuit expressly noted in *dicta*, however, that if the plaintiff had "resisted (*i.e.*, jerked his arm away), and if the resistance occurred before the use of force by [the arresting officer], his conviction for resisting arrest would not be called into question even if he later recovered on a § 1983 excessive-force claim."  *Id*. at 495.  *Swiecicki* thus excludes from the *Heck*-bar circumstances in which it is possible to draw a temporal distinction between pre-arrest conduct and post-arrest conduct.

The reasoning for this temporal rule is articulated in *Sigley v. Kuhn*, 205 F.3d 1341 (6th Cir. 2000). *Sigley* is factually analogous to the case at bar in that both involve resistance to a lawful arrest followed immediately by the use of (allegedly excessive) force after the arrest was completed. *Id.* at *1. In *Sigley*, the police stopped the § 1983 plaintiff for speeding and driving erratically. *Id.* The plaintiff failed field sobriety tests and the police officer informed him that he was under arrest. *Id.* The plaintiff dropped to his knees and begged to be released. *Id.* When the arresting police officer attempted to bring the plaintiff to his feet, the plaintiff tackled him and a struggle ensued. *Id.* The officer prevailed in the struggle and shot the plaintiff twice. *Id.*

The plaintiff in *Sigley* was found guilty in Ohio state court of resisting arrest. *Id.* The Court held, however, that *Heck* did not bar a § 1983 claim arising from the arresting officer's use of force:

> In this case, Sigley's section 1983 action does not seek to invalidate his charge for resisting arrest. The parties do not dispute that Kuhn [the arresting officer] made a lawful attempt to arrest Sigley for drunk driving, and that Sigley unlawfully resisted. ***Sigley's section 1983 action attempts to prove that Kuhn used unreasonable and excessive force subsequent to Sigley's arrest and resistance. Nothing in that determination invalidates the underlying criminal conviction for resisting arrest.***

*Id.* at *4 (emphasis supplied). In *Sigley*, the Court implicitly determined that it could make a temporal distinction between the lawful arrest and the subsequent, independent use of allegedly excessive force after the arrest was completed.[16]

---

[16]    As Judge Sutton said in his concurrence in *Swiecicki*, excessive force claims do not *necessarily* imply the invalidity of a resisting arrest conviction:

> As a matter of sheer logic, one may bring a successful excessive-force claim without having to establish that the resisting-arrest charge was unlawful: An officer could legitimately arrest a suspect but use excessive force in bringing the suspect to the station. And as a matter of state-court precedent, Ohio law permits exactly that type of excessive-force claim, namely one that follows a lawful arrest. *See*

28

When the Plaintiff does not allege that the force at issue occurred after a lawful arrest, the Court need not address whether it is possible to draw a temporal line between pre-arrest and post-arrest conduct.  For example, the Court did not need to reach this issue in *Jackim v. City of Brooklyn*, No. 1:05CV1678, 2007 WL 893868, at *4-7 (N.D. Ohio Mar. 22 2007) (O'Malley, J.).  In *Jackim*, this Court analyzed the Sixth Circuit's application of *Heck* in *Swiecicki*.  The plaintiff in *Jackim* clearly alleged that the force preceded any resistance or provocation.  Therefore, this Court held that *Heck* barred the plaintiff's § 1983 action.  *Id.* at *6.  The *Jackim* opinion cites *Sigley* as an example of a case in which the alleged excessive force occurred ***"subsequent to*** the arrest and resistance."  *Jackim*, 2007 WL 893868 at n.10 (emphasis in original).  Because *Sigley* is factually analogous to this case, at least as the facts are set forth by the Plaintiffs, the Court is forced to draw a different conclusion here than the one it drew in *Jackim*.

In addition, in *Jackim*, the Court also expressly stated that *Heck* bars a § 1983 claim for excessive force if the force at issue occurs "prior to **or in conjunction with** any resistance by the

---

*City of Cleveland v. Murad*, 84 Ohio App. 3d 317, 616 N.E.2d 1116, 1120 (Ohio Ct. App. 1992) (recognizing that an excessive-force claim and a resisting-arrest conviction may co-exist in some settings).

*Swiecicki*, 463 F.3d at 504.

Other circuits, as well as the Southern District of Ohio, have used the same reasoning in holding that *Heck* does not always bar an excessive-force claim from proceeding in the face of an outstanding conviction for resisting arrest.  *See Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999); *Nelson v. Jashurek*, 109 F.3d 142, 146 (3d Cir. 1997); *Jones v. Marcum*, 197 F.Supp.2d 991, 1005 (S.D. Ohio 2002).  Collectively, these cases demonstrate that it is both logical and consistent with existing precedent to draw a temporal line between (1) resistance to a lawful arrest (which leads to a state court conviction for resisting arrest) and (2) the use of excessive force after the lawful arrest was completed (which can give rise to a § 1983 claim).

29

defendant." *Id.* at *6 (emphasis added) (citing *Swiecicki*, 463 F.3d at 494).  Under *Jackim*, the *Heck* bar therefore applies if the force and the resistance occur simultaneously.  The Court recognizes that, in the context of a police encounter, situations may arise in which it would be impossible to divide the events into pre-arrest and post-arrest conduct.  Therefore, in order to avoid the *Heck* bar, a § 1983 plaintiff asserting an excessive force claim who was found guilty of resisting arrest under Ohio law must, at the very least, raise a material issue of fact with respect to whether it is possible to draw a temporal line between pre-arrest and post-arrest conduct.

In light of the authority discussed above, the issue in this case regarding the applicability of *Heck* is whether there is a material issue of fact regarding the timing of Michaels' resistance.  In other words, if, on the facts as alleged by the Plaintiffs, a jury could find that two distinguishable events occurred here – *i.e.*, (1) resistance to a lawful arrest and (2) the use of excessive force after the arrest had already been accomplished – then *Heck* does not bar the Plaintiffs' § 1983 claims.

Taking the facts as set forth by the Plaintiffs, Officer Grassnig allegedly tased Michaels after the arrest had been effectuated, after Michaels had ceased resisting, and while Michaels was fully inside the squad car.  Although this is a close question given that the events at issue occurred in quick succession, the Court finds that the Plaintiffs have raised a material issue of fact with respect to whether the tasing incident to Michaels' lawful arrest is distinct from the gratuitous tasing the Plaintiffs assert as the basis of their excessive force claims.  This case thus falls into the narrow category described by the *dicta* in *Swiecicki*:  Because Michaels has alleged that the police tased him gratuitously *after* he resisted arrest (and after he had ceased resisting arrest), *Swiecicki* does not require the Court to apply

the *Heck*-bar.[17]

As a result, the excessive force claim against Officer Grassnig survives summary judgment. It is important to recognize the narrow contours of the surviving claim that the Plaintiffs have presented, however. As the analysis above makes clear, the Plaintiffs cannot challenge either Michaels arrest or Officer Grassnig's initial use of the taser, when Michaels was resisting arrest and Officer Grassnig used the taser in direct response to that resistance so that he could effectuate the arrest. The Plaintiffs' claim is limited to whether Officer Grassnig's *subsequent* use of the taser constituted excessive force in violation of the Fourth Amendment. The Plaintiffs have raised an issue of material fact with respect to this narrow question. Therefore, Officer Grassnig is not entitled to qualified immunity under the *Saucier* test.

---

[17]    The parties have not submitted the record of the proceeding in juvenile court in which Michaels was found guilty of resisting arrest. The Court is therefore unaware of the facts on which the juvenile court actually based its conviction. It is possible that Michaels' resisting arrest conviction in juvenile court stands without reference to Officer Grassnig's challenged use of the taser because, on the facts as alleged by the Plaintiffs, Michaels did not resist arrest after being tased the first time. Michaels does not dispute that he resisted arrest *prior* to that first tasing. The Plaintiffs' excessive force claims relate to Officer Grassnig's use of the taser *after* he had already arrested and handcuffed Michaels, and after his resistance had allegedly ceased. The juvenile court *could* have based the resisting arrest conviction solely on Michaels' conduct prior to being tased, *i.e.*, prior to the alleged excessive force. As alleged, the Plaintiffs' excessive force claims therefore *may* not imply the invalidity of the juvenile court conviction for resisting arrest, and thus do not run afoul of *Heck*. *See Swiecicki*, 463 F.3d at 495; *Sigley*, 205 F.3d 1341; *Jackim*, 2007 WL 893868 at *6; *Martinez*, 184 F.3d at 1127.

31

## IV.    CONCLUSION

        For the foregoing reasons, qualified immunity will not insulate Officer Grassnig from the Plaintiffs' § 1983 excessive force claims.  Accordingly, the Officers' motion for summary judgment (Doc. 17) is **DENIED** as to Officer Grassnig and **GRANTED** as to Officer Reinheimer.  In addition, the Plaintiffs' motion for leave to file a supplemental response to the Officers' motion for summary judgment (Doc. 39) is **DENIED**.


        **IT IS SO ORDERED.**


_____          **s/Kathleen M. O'Malley**
                                                   **KATHLEEN McDONALD O'MALLEY**
**Dated: February 22, 2008**                       **UNITED STATES DISTRICT JUDGE**